| iSEXTON, Judge,
concurring.
This ease presents a very interesting and close legal issue hinging on the meaning of the word “timberlands” in LSA-C.C. Art. 562. If the “timberlands” term of that code article is synonymous with the term “tree farm,” then obviously the usufructuary has no right to the proceeds of any timber operations on the subject property because it is clear that the entire tract at issue in the instant case is not a tree farm. On the other hand, if the phrase “timberlands” of Art. 562 means any property with merchantable trees, then Art. 562 clearly would give the usufruc-tuary the right to proceeds from “proper management,” including the selective cutting authorized by the trial court on the 30-acre tract.
Certainly, Comment (b) to Art. 551 supports the position that the usufructuary only has the right to cut in a tree farm. That comment points out that trees are ordinarily considered capital assets rather than fruits because of their slow growth and high value, but that trees in a tree farm or a regularly exploited forest may be regarded as fruits because they are produced according to destination of the property without diminution of its substance. Similarly, Comment (b) to Art. 560 would seem to limit the usufructu-ary. It states that the usufructuary’s right to continue timber operations of the owner and to treat as fruits products of a regularly exploited forest are covered by Art. 562. The obvious implication is that Art. 562 is intended only to apply to a regularly exploited forest or tree farm.
However, the comments to Art. 562 contrast with the limiting comments aforesaid. Comment (a) establishes the usufructuary’s right “to the proceeds of certain timber operations.” Comment (b) points out that the usufructuary is entitled to proceeds of timber operations “that derive from a proper management of timberlands.” The comment continues that “these solutions” are founded in considerations of social and economic utility as well as concern for the interests of both the usufructuary and the naked owner. It further points out that society has an interest in the continuous productivity of timberlands. Comment (c) defines timber as trees which produce ^economic gain such as pulp wood, pines, hardwoods, or building lumber. Particularly telling is the final sentence of that comment that “[t]his would be equivalent to the definition of ‘merchantable timber’ as used in Louisiana law.” Comment (d) notes that timber operations of the usufructuary should not deplete the substance of the land and that regulated felling insures continuous production of timber and an improvement of its quality. It concludes by further noting that the interests of a naked owner are protected by the prohibition of waste and the obligation of the usufructuary to act as a prudent administrator and to preserve the substance of the property subject to the usu-fruct.
In summary, the comments to Arts. 551 and 562 suggest a bright line rule that only gives the usufructuary the authority to cut a regularly exploited forest, i.e., a tree farm. *495 On the other hand, the use of the word “timberlands” in Art. 562, when read in conjunction with the extensive comments to that article indicate a legislative intent to balance the interest of the usufructuary to continued income with the right of the naked owner to have the substance of the forest essentially maintained. The implication, then, as this opinion apparently holds is that a usufructu-ary may 'prudently cut any forested land. Obviously, then, each circumstance must be dealt with on a case-by-case basis.
I suggest that this record and the trial court judgment leave several unanswered questions regarding what trees the usufruc-tuary may cut. The judgment here allows the usufructuary to “selectively cut approximately 30 acres ... as said areas may be marked by plaintiffs foresters, in keeping with good forestry practices, with drainage areas and areas along streams to be protected in accordance with good management practices....” Selective cutting certainly means at least thinning of the timber by removal of the poorer trees to make room for younger, better trees to grow. It is less than clear, however, whether that also includes certain older, more mature trees unlikely to be assisted by selective thinning.
IsThe foresters unanimously testified that the older trees of any size would not be assisted by thinning. The evidence also indicates, however, that older high trees prevent younger, smaller trees from growing. Indeed, Mr. Peters (relied on extensively by the trial court) testified that a proper selective cutting increases the growth rate of the stand that’s left as it creates more growing space for the good trees by removing the poor trees.
Thus, it is unclear whether a usufructuary may selectively cut the older trees existing on the instant larger tract. In this case, the foresters testified that the older trees such as those in the 60-year-old plus range will grow very little. They also testified that 40-year-old trees will only grow some. These are the trees “where the money is.” Obviously, the opinion prohibits clear cutting, but does it allow the usufructuary as a “prudent administrator” to selectively remove some of these larger trees? The record indicates that all of the trees on the larger 113-acre tract in the instant case are approximately the same age. It is simply that the smaller trees lost the competition for the nutrients. The record indicates they will hardly grow at all as a result of a thinning or selective cutting. Should they be harvested and under what circumstances?
Obviously, this opinion leaves many unanswered questions as to timberlands burdened with a usufruct.
While I normally enjoy the subjectivity of the civil law, I think we would be better served with more of a bright line objective rule in this area. I respectfully concur.